# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MISSISSIPPI LIME COMPANY,** ] | |
| ] | |
| **Plaintiff-Counter Defendant,** ] | |
| ] | |
| v.                                     ] | 2:23-cv-1077-ACA |
| ] | |
| **RJR MINING COMPANY, INC.,** ] | |
| ] | |
| **Defendant-Counter Claimant.** ] | |

## MEMORANDUM OPINION

Plaintiff Missisippi Lime Company contracted to purchase all of its coal needs for one of its facilities from Defendant RJR Mining Company, Inc. at a set price. In 2022, while negotiating an increase to the price of the coal, Mississippi Lime looked for and began purchasing coal from other suppliers. The parties agreed to the new price for the coal with no other changes to the contract. Mississippi Lime then accepted thirteen shipments of coal from RJR but refused to pay for them. Mississippi Lime sued RJR for breach of contract and fraud. RJR counterclaimed, also asserting breach of contract and fraud. Mississippi Lime moves, under Federal Rule of Civil Procedure 12(b)(6), to dismiss RJR's fraud claims for failure to state a claim. The court **WILL GRANT** the motion and **WILL DISMISS** the fraud claims because RJR has not adequately alleged how any omissions by Mississippi Lime damaged it.

## I.     BACKGROUND

In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the pleading and construe them in the light most favorable to the non-movant. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider evidence the pleading incorporates by reference as long as the evidence is of undisputed authenticity and central to the claims made in the pleading. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Mississippi Lime attached the contract at issue to its complaint and RJR's counterclaim incorporates that contract by reference. (Doc. 1 ¶ 14; doc. 1-1; doc. 30 at 15 ¶ 1). Neither party disputes the authenticity of the contract and it is central to RJR's claims. (*See* doc. 1 ¶ 14; doc. 30 at 15 ¶ 2). Accordingly, the court will consider not only RJR's allegations but also the contract.

In September 2020, Mississippi Lime and RJR entered a contract for RJR to be the exclusive supplier of coal to one of Mississippi Lime's facilities. (Doc. 1-1 at 2, 5). The parties agreed that coal delivered until December 31, 2021 would cost $90 per ton and coal delivered in 2022 would cost $91 per ton. (*Id.* at 3). The contract also mandated a minimum quality for the coal. (*Id.*). Finally, the contract contained a "force majeure" clause, which excused a party's failure to perform in certain unavoidable situations. (*Id.* at 4).

RJR did not always send coal that conformed to the quality specifications. (Doc. 30 at 19 ¶ 17). Despite this failure, Mississippi Lime always accepted the nonconforming coal. (*Id.*). In early 2022, the cost of fuel increased because of the war in Ukraine. (*Id.* at 17–18 ¶¶ 8–14). In February 2022, RJR informed Mississippi Lime that because of the increase to fuel prices, RJR would go out of business unless the parties amended the contract to increase the price of the coal. (*Id.* at 17–18 ¶ 10). In March 2022, the trucking company RJR used informed RJR that the trucking company would no longer be able to provide trucks or drivers unless RJR agreed to a fuel surcharge of $4.50 per ton. (*Id.* 18 ¶ 12–13). RJR then advised Mississippi Lime of the difficulty in continuing to operate without a fuel surcharge and an increase in the coal's price. (Doc. 30 at 18 ¶ 14). Mississippi Lime's representative immediately agreed to the fuel surcharge, instructed RJR to continue shipping coal, and stated she needed to get approval for a price increase from Mississippi Lime's board of directors. (*Id.* at 18–19 ¶ 15).

RJR eventually asked Mississippi Lime to amend the contract to reflect a sales price of $139 per ton of coal. (*Id.* at 19 ¶ 16). Mississippi Lime agreed, as long as the coal satisfied the quality specifications set out in the contract. (*Id.* at 19 ¶ 17). But Mississippi Lime knew that RJR would source the coal from the same mine it had been using, which had produced the coal that "[did] not and could not conform exactly to the specifications." (Doc. 30 at 19 ¶ 18). RJR and Mississippi Lime

3

confirmed that the amendment to the contract would be in effect for the rest of the contract term (that is to say, until the end of 2022). (*Id.* at 19–20 ¶ 19; *see* doc. 1-1 at 2).

Unbeknownst to RJR, while the parties were negotiating the amendment to the contract, Mississippi Lime had begun looking for and eventually purchasing coal from other suppliers. (Doc. 30 at 20 ¶¶ 20–23). Mississippi Lime entered a contract with another supplier as early as April 1, 2022. (*Id.* at 24 ¶ 41). In June and July 2022, RJR sent Mississippi Lime thirteen shipments of coal, which Mississippi Lime accepted. (*Id.* at 16–17 ¶¶ 5–6). But Mississippi Lime did not pay for the coal. (*Id.* at 17 ¶ 6). Mississippi Lime eventually informed RJR that its inventory was full and it would not need any more coal. (Doc. 30 at 20 ¶ 23).

RJR asserts two breach of contract claims, which are not at issue in this opinion, and two fraud claims, which Mississippi Lime moves to dismiss. (*Id.* at 21–26 ¶¶ 25–53; doc. 32). In Count Three, RJR makes a claim of fraudulent suppression and deceit. (Doc. 30 at 23–25). RJR asserts that Mississippi Lime fraudulently suppressed its decision to terminate the contract, inducing RJR to enter the amended contract when it otherwise would not have done so. (*Id.* at 24 ¶¶ 40–42). In Count Four, RJR makes a claim of promissory fraud. (*Id.* at 25–26). RJR asserts that Mississippi Lime suppressed its decision to terminate the contract, causing RJR to

continue to provide coal while Mississippi Lime searched for new suppliers. (*Id.* at 26 ¶¶ 50–52).

## II. DISCUSSION

Mississippi Lime moves to dismiss RJR's two fraud claims, under Rule 12(b)(6), for failure to state a claim. (Doc. 32). In general, a party must "plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But where a party pleads a claim of fraud, the standard is heightened: "[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Because the court's jurisdiction over this action arises in diversity, the court must apply state substantive law. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). The contract contained an Alabama choice-of-law provision (doc. 1-1 at 5), and neither party disputes the applicability of Alabama law (*see generally* docs. 32, 34). The court will therefore apply Alabama law.

Count Three asserts a claim of fraudulent suppression and deceit and Count Four asserts a claim of promissory fraud. (Doc. 30 at 23, 25). Although different forms of fraud, both require that the defrauded party have reasonably relied on the

misrepresentation or omission and that the defrauded party have suffered damages as a proximate result. *See Ala. Psychiatric Servs., P.C. v. 412 S. Ct. St., LLC*, 81 So. 3d 1239, 1247 (Ala. 2011) (listing the elements of fraudulent suppression); *Bethel v. Thorn*, 757 So. 2d 1154, 1159 (Ala. 1999) (listing the elements of promissory fraud); *see also Johnson v. Sorensen,* 914 So. 2d 830, 837 (Ala. 2005) ("Although the term 'inducement' has often been used in the description of the [third] element of suppression, it is clear that a plaintiff's 'reasonable reliance' is an essential element of a suppression claim.") (cleaned up).

The court begins and ends with Mississippi Lime's first argument, which is that RJR cannot establish reasonable reliance or damages because the amended contract required RJR to do only what it had already contracted to do. (Doc. 32 at 7–10). RJR responds that, had it known Mississippi Lime was seeking other coal suppliers, it would have terminated the contract under the force majeure clause, modified its business plan, or searched for additional buyers or a replacement buyer. (Doc. 34 at 4–5). Mississippi Lime replies that RJR is bound by its pleading, which asserts only that it would not have entered the amended contract if it had known that Mississippi Lime was searching for other coal suppliers. (Doc. 35 at 4–5).

To plead a fraud claim with the particularity required by Rule 9(b), a party must allege the "manner in which the[ ] statements misled [it]." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (quotation marks omitted). RJR's

amended counterclaim pleads only that its reliance on Mississippi Lime's omissions caused it to enter into the amended agreement. (Doc. 30 at 24–25 ¶ 44, 26 ¶ 52). RJR has not moved to amend its counterclaim to add that its reliance prevented it from terminating the contract, modifying its business plan, or searching for other buyers. And a party may not amend its pleading by argument in a brief. *Cf. Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for [parties] to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A [party] may not amend [its] complaint through argument in a brief opposing summary judgment."). RJR's fraud claims are, therefore, limited to the claims it made in its amended complaint: that Mississippi Lime's omissions caused it to enter into the amended contract. (Doc. 30 at 24–25 ¶ 44, 26 ¶ 52).

Under Alabama law, "[a] person who has been induced to do that which the law would have otherwise required him to do cannot claim to have been defrauded." *Reeves v. Porter*, 521 So. 2d 963, 968 (Ala. 1988) (quotation marks omitted). "In other words, one suffers no damage where he is fraudulently induced to do something which he is under legal obligation to do, such as . . . perform a valid contract." *Id.* (quotation marks and emphasis omitted). Here, according to RJR's pleading, it had a valid contract with Mississippi Lime under which it was to supply Mississippi Lime with coal of a specific quality and price. (Doc. 30 at 15 ¶ 2; doc. 1-

7

1). The amended contract with Mississippi Lime continued to require it to supply Mississippi Lime with the same quality of coal, but at a higher price. (*Id.* at 19 ¶ 16). The amended contract did not change RJR's legal obligations. (*See id.*). "A representation in an arm's length transaction that causes a person to do nothing more than he was legally obligated to do without such a representation being made, is not material and therefore cannot constitute actionable fraud" because that person has "suffer[ed] no damage." *Reeves*, 521 So. 2d at 967–68 (quotation marks and emphasis omitted). Accordingly, the court **WILL GRANT** Mississippi Lime's motion to dismiss Counts Three and Four because RJR has not adequately alleged how any omissions damaged it.

### III. CONCLUSION

The court **GRANTS** Mississippi Lime's motion to dismiss Counts Three and Four and **WILL DISMISS** those counts **WITH PREJUDICE**.

**DONE** and **ORDERED** this May 17, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE