FILED

2026 Jan-15  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MISSISSIPPI LIME COMPANY,** | ] | |
| | ] | |
| **Plaintiff-Counter Defendant,** | ] | |
| | ] | |
| **v.** | ] | **2:23-cv-1077-ACA** |
| | ] | |
| **RJR MINING COMPANY, INC.,** | ] | |
| | ] | |
| **Defendant-Counter Claimant.** | ] | |

## MEMORANDUM OPINION

Plaintiff Mississippi Lime Company entered into a Coal Supply Agreement ("Agreement") with Defendant RJR Mining Company, Inc. under which RJR was required to provide Mississippi Lime coal at a price of $91 per ton through December 31, 2022. In March 2022, RJR informed Mississippi Lime that Mississippi Lime would have to pay $95.50 per ton to have any more coal delivered and that RJR would need to increase the fee even more to stay in business. This lawsuit followed.

Mississippi Lime brings several claims against RJR, including a claim for repudiation; RJR asserts two counter claims against Mississippi Lime. RJR's first counter claim is for breach of contract for coal delivered in June and July 2022 ("Counterclaim One"). (Doc. 30 at 16 ¶ 5, 21 ¶¶ 25–29). The second counterclaim alleges Mississippi Lime breached the Agreement by purchasing coal from other

suppliers in violation of the Agreement's exclusivity provision ("Counterclaim Two"). (*Id.* at 20 ¶¶ 20, 22, 30–35).

Mississippi Lime moved for summary judgment on its repudiation claim as well as both counter claims. (Doc. 49). In September, this court partially granted Mississippi Lime's motion for summary judgment on its repudiation claim with respect to liability but reserved the issue of damages for a jury. (Doc. 82). This Order addresses Mississippi Lime's motion for summary judgment on RJR's two counter claims. For the reasons set out below, the court **WILL GRANT** Mississippi Lime's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor on both of RJR's counterclaims.

## I.    BACKGROUND

When ruling on a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true,

historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

Mississippi Lime Company manufactures high-calcium quicklime and hydrated lime products from its production facility in Calera, Alabama. (Doc. 1 at 2 ¶ 8; doc. 55 at 7 ¶ 2). The operations at this facility depend on a continuous and uninterrupted supply of coal. (Doc. 50-24 at 41, 69, 75–77, 81; doc. 50-26 at 11; doc. 50-28 at 3 ¶ 7; doc. 50-29 at 3 ¶ 7). To that end, Mississippi Lime entered into a fixed price contract with RJR Mining Company, Inc., a coal mining company and coal supplier. (Doc. 50-1; doc. 50-17 at 4 ¶ 14; doc. 50-19 at 3 ¶ 14, 16 ¶ 2; doc. 50-25 at 33).

As relevant here, the Agreement obligated Mississippi Lime to purchase coal from RJR "at the rate of 65,000 tons per year" beginning September 9, 2020 and obligated RJR to sell Mississippi Lime coal at a price of $91.00 per ton in 2022. (Doc. 50-1 at 1–2). Costs associated with delivering the coal were the "sole expense" of RJR. (*Id.* at 1). The Agreement also required a writing signed by both parties to amend its terms. (*Id.* at 5).

In early 2022, fuel prices increased. (Doc. 50-25 at 26–27). In February, RJR told Mississippi Lime that RJR would not be able to perform under the terms of the Agreement because of labor and commodity price increases. (Doc. 50-22 at 43–44). Mississippi Lime's procurement strategist, Jo Anna Bailey, went to RJR's mine and

met with Bruce Sanders, RJR's secretary, one month later. (Doc. 50-24 at 8–9; doc. 50-22 at 13, 44). At this meeting, Mr. Sanders "advised [Ms.] Bailey that RJR's primary source of delivering coal to MLC . . . would not deliver any coal effective March 14, 2022" if the trucking company did not receive a $4.50/ton fuel surcharge. (Doc. 64 at 8 (citing doc 50-22 at 46 ("let [Ms. Bailey] know that if [Mississippi Lime was] going to continue in business, and [Mississippi Lime] continued to get coal from [RJR], the truckers had to have an additional $4.50 a ton immediately . . .."); doc. 50-24 at 55). Mr. Sanders also told Ms. Bailey that if Mississippi Lime did not agree to pay even more per ton for coal, RJR could not stay in business. (Doc. 50-22 at 47; doc. 50-24 at 55). Mr. Sanders testified that he may have asked for $145 per ton and Ms. Bailey "came back at 139." (Doc. 50-22 at 47). Ms. Bailey testified that Mr. Sanders told her RJR "would probably need $139 [per ton] to stay open." (Doc. 50-24 at 55). Ms. Bailey immediately agreed to pay RJR $95.50/ton to cover the fuel charge but did not agree to any price change for the coal itself. (Doc. 50-22 at 46–47; doc. 50-24 at 55).

Five days later, Ms. Bailey confirmed to Mr. Sanders that Mississippi Lime would pay the $4.50 fuel surcharge but did not agree to the price increase. (Doc. 50-22 at 48). Later that day, she emailed Mr. Sanders to inform him that Mississippi Lime would provide "some price relief through April 30, 2022 ($139 per ton delivered as discussed) contingent on" certain conditions. (Doc. 50-9 at 2). Those

4

conditions were that: (1) the coal remained within contract specifications; (2) Mississippi Lime received the appropriate volume of coal; and (3) RJR provided quality and financial transparency. (Doc. 50-23 at 70). RJR immediately began invoicing Mississippi Lime at $139 per ton of coal. (Doc. 50-8 at 3).

In early April 2022, Ms. Bailey sent Mr. Sanders an email stating: "Now that we have the conditions met that we discussed (continue to watch quality—not consistently in contract spec), we will pay $139 per ton for April deliveries . . . ." (Doc. 50-24 at 224). The email also referenced the upcoming review of financial information and quality reports. (*Id.*). On April 19, Ms. Bailey told Mr. Sanders again that the offer to pay $139 per ton for April deliveries was contingent on RJR meeting the listed benchmarks in her initial offer. (*Id.* at 226). She also informed him that Mississippi Lime did not receive the financial information until April 5 and that the coal had not remained in contract specifications. (Doc. 50-24 at 226).

Ms. Bailey began looking for alternative sources of coal in April. (*Id.* at 79–81). In part, Ms. Bailey did so because RJR did not deliver the agreed upon amounts, and the facility needed a continuous supply of coal. (Doc. 50-29 at 4 ¶ 16; doc. 50-24 at 41; doc. 64 at 9 ¶ 32 (contending the parties entered into an amended agreement but not disputing that RJR undersupplied). In late April, she emailed other Mississippi Lime employees stating that Mississippi Lime had sampled coal from an alternative supplier and that if that coal was blended, Mississippi Lime would

"have approximately 6–7K tons of coal." (Doc. 50-24 at 234). The coal was "leftover coal from another supplier or [coal that the] customer that didn't use it," and Mississippi Lime was attempting to find "cover coal to help maintain continuity of supply." (*Id.* at 81). That same day, Ms. Bailey told RJR that Mississippi Lime's "coal shed is getting a little full, so we are requesting 25 trucks next week to balance the inventory." (*Id.* at 227). Mississippi Lime paid Southeastern Minerals $120 and $140 per ton for two April deliveries. (Doc. 50-15 at 2–3).

At the end of April, Mr. Sanders emailed Ms. Bailey asking how pricing would be handled after April. (Doc. 50-24 at 227). There is no email response in the record and Ms. Bailey testified that she did not recall responding to Mr. Sanders's question. (Doc. 50-24 at 69).

## II.    DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, "[t]he nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1199 (11th Cir. 2024).

Mississippi Lime moves for summary judgment on both of RJR's counterclaims. The court will address each in turn.

### a. RJR's First Counterclaim

RJR's first counterclaim alleges that Mississippi Lime's continued acceptance of coal after March 15 and its agreement to conditional price relief through April 30, 2022, created an amended Agreement between the two parties to pay "$139 per ton for coal, instead of the amounts set out in the Agreement." (Doc. 30 at 15 ¶ 3). The counterclaim further alleges that the term of the "amended Agreement" was modified beyond April 30, 2022, by Mississippi Lime's course of conduct. (*Id.* at 16 ¶ 5). RJR contends that Mississippi Lime then breached this "amended Agreement" by failing to pay four invoices dated June 11, June 17, June 24, and July 8, 2022. (*Id.* ¶¶ 5–6).

The court will first address whether the March 15 agreement amended the Agreement and next address whether this so-called "amended Agreement" (e.g., the March 15 email), was modified by Mississippi Lime's course of conduct.

RJR's contention that there was an amended Agreement fails for several reasons. First, the court previously held that RJR repudiated the Agreement. Second, there is no writing signed by both parties amending the Agreement. Finally, even if there was an "amended Agreement," the amended Agreement changed the cost per ton through April 30, 2022. It did not change the Agreement's requirement that it

7

could only be amended in a writing signed by both parties. Therefore, the amended Agreement could not be amended by course of conduct, so there was no "amended Agreement" that Mississippi Lime breached by failing to pay the June and July invoices.

The court previously granted Mississippi Lime's motion for summary judgment on its claim that RJR repudiated the contract as a matter of law in March 2022. (Doc. 82). Mississippi Lime proffered undisputed facts establishing that the Agreement between Mississippi Lime and RJR required RJR to pay all expenses of delivering the coal to Mississippi Lime's Calera Facility. (Doc. 50-1 at 1). But RJR informed Mississippi Lime that it had to pay an additional $4.50 per ton for a fuel surcharge to receive any further deliveries of coal. (Doc. 50-22 at 46–47; doc. 50-24 at 55; *see also* doc. 64 at 8 ¶ 26). And in that same conversation, RJR informed Mississippi Lime that it could not stay in business—and thus, could not perform under the terms of the Agreement—without increasing its price of coal to somewhere between $139 and $145 per ton. (Doc. 50-22 at 47; doc. 50-29 ¶ 14; *see also* doc. 64 at 9 ¶ 27 (conceding that RJR stated that it would no longer supply coal unless Mississippi Lime agreed to a price increase); doc. 55 at 16 ¶ 27).

In response to the motion for summary judgment, RJR contended that its demand to increase the contract price did not amount to repudiation because it "never expressed an unwillingness or inability to supply required amounts of conforming

coal." (Doc. 64 at 20). But RJR did not dispute it could not perform at the rate of $91 per ton of coal. Instead, RJR maintains that a jury could conclude that Mississippi Lime simply agreed to amend the Agreement, resulting in almost a 50% increase in the fixed price. (*Id.* at 24).

This court disagreed. Whether RJR was unwilling or unable to supply required amounts of conforming coal was irrelevant because it is undisputed that RJR declared that it was unable to perform the contract at the price stated in the Agreement. This constitutes repudiation. *Shirley v. Lin*, 548 So. 2d 1329, 1334 (Ala. 1989) (noting that "insistence on a new payment . . . scheme constitute[s] an 'unqualified refusal' to perform the terms of the prior agreement and, thus, constitute[s] a repudiation of the contract."); *see also Cong. Life Ins. Co. v. Barstow*, 799 So. 2d 931, 938 (Ala. 2001) ("If a party wrongfully states that he will not perform unless the other party consents to a modification of the contract, the statement is a repudiation." (quotation marks omitted)); *Bd. of Water & Sewer Comm'rs of City of Mobile v. Bill Harbert Const. Co.*, 27 So. 3d 1223, 1258 (Ala. 2009).

At oral argument, RJR presented a different argument. It insisted that Mississippi Lime's continued acceptance of coal after March 15 and its agreement to conditional price relief through April 30, 2022, necessarily created an amended

Agreement that the parties then later amended by course of conduct. The court rejected this argument too.

Again, the Agreement clearly states that any amendment to the agreement must be in writing and signed by both parties. (Doc. 50-1 at 5). RJR's evidence of the "amended Agreement" is a March 15, 2022 email from Ms. Bailey agreeing to temporary, conditional price relief (contingent on specified conditions) and Mississippi Lime's course of conduct. But a single email from one party to the contract to which there is no written response does not constitute a writing signed by both parties. Thus, Mississippi Lime's agreement to pay $139/ton of coal does not amend the Agreement's terms.

So, even if Mississippi Lime's email satisfied the Agreement's amendment requirement, that "amended Agreement" ended on April 30, 2022 and could only be extended by further written amendment. (Doc. 50-1 at 5); Ala. Code § 7-2-209(2). Thus, RJR's contention that Mississippi Lime breached its contract in June and July of 2022 fails because the contract could not be extended by course of conduct. Consequently, there was no contract in place after April 30, 2022 and Mississippi Lime cannot be in breach by failing to pay invoices in June and July 2022. Accordingly, RJR's counterclaim fails.

  *b. RJR's Second Counterclaim*

In Counterclaim Two, RJR contends that Mississippi Lime breached the exclusivity provision in the Agreement by purchasing coal from other suppliers. (Doc. 30 at 22 ¶¶ 30–35). Specifically, RJR's complaint alleges that Mississippi Lime "entered into an agreement with other companies at least by April 1, 2022" (doc. 30 at 20 ¶ 22) and that "[a]t some point on or before April 1, 2022, MLC began purchasing coal from other suppliers" (*id.* at 22 ¶ 32). But RJR proffers no evidence that Mississippi Lime breached the exclusivity provision before April 2022. In fact, the undisputed facts establish that Mississippi Lime did not contract with nor purchase coal from any other source before April 1, 2022. (Doc. 64 at 13 ¶¶ 9–11 (contending Mississippi Lime received coal from a different supplier in late April 2022)).

Moreover, as outlined above, RJR repudiated the contract in March 2022, and thus the repudiation excused Mississippi Lime from any of its obligations under the agreement. *Shirley*, 548 So. 2d at 1334 ("Once a party to a contract repudiates the agreement, the other party is excused from further performance."). Accordingly, there is no genuine issue of fact as to whether Mississippi Lime breached the exclusivity agreement.

### III.   CONCLUSION

For the reasons above, the court **WILL GRANT** Mississippi Lime's motion (doc. 49) and **WILL ENTER SUMMARY JUDGMENT** in its favor on RJR's Counterclaims One and Two.

**DONE** and **ORDERED** this January 15, 2026.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE